**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

CASSANDRA SMITH,                          :

     Plaintiff,                               :

vs.                                        :           CA 18-0126-MU

NANCY A. BERRYHILL,                   :
Acting Commissioner of Social Security,
                                           :
     Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking

judicial review of a final decision of the Commissioner of Social Security denying her

claims for a period of disability, disability insurance benefits, and supplemental security

income. The parties have consented to the exercise of jurisdiction by the Magistrate

Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 23 ("In

accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this

case consent to have a United States magistrate judge conduct any and all proceedings

in this case, . . . order the entry of a final judgment, and conduct all post-judgment

proceedings."); *see also* Doc. 25 (endorsed order of reference)). Upon consideration of

the administrative record, Plaintiff's brief, and the Commissioner's brief,[1] it is determined

that the Commissioner's decision denying benefits is due to be affirmed.[2]

---

[1]     The parties in this case waived oral argument. (*See* Docs. 24 & 26.)

[2]     Any appeal taken from this memorandum opinion and order and judgment shall be
made to the Eleventh Circuit Court of Appeals. (*See* Doc. 23 ("An appeal from a judgment entered
(Continued)

# I. Procedural Background

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income, in late December 2014 to early January of 2015, alleging disability beginning on October 30, 2014. (*See* Tr. 498-505.) Smith's claims were initially denied on May 1, 2015 (Tr. 381-83 & 429-39) and, following Plaintiff's June 4, 2015 written request for a hearing before an Administrative Law Judge ("ALJ") (Tr. 443; *see also* Tr. 440-41), a hearing was conducted before an ALJ on December 2, 2016 (Tr.172-92). On April 7, 2017, the ALJ issued a decision finding that the claimant was not disabled and, therefore, not entitled to a period of disability, disability insurance benefits, or supplemental security income. (Tr. 39-56). More specifically, the ALJ proceeded to the fifth step of the five-step sequential evaluation process and determined that Smith retains the residual functional capacity to perform those light jobs identified by the vocational expert ("VE") during the administrative hearing (*compare id.* at 55 *with* Tr. 188-90 & 191). Sometime thereafter, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council; in an opinion directed solely to Plaintiff's claim for SSI benefits, the Appeals Council denied Plaintiff's request for review on February 1, 2018 (Tr. 4-7) and, that same date, an Order issued from the Appeals Council notifying Plaintiff that it was dismissing her request for a hearing dated June 4, 2015 on her claim for a period of disability and disability insurance benefits, finding the ALJ's decision dated April 7, 2017 of no effect on that claim, and finding the "decision dated May 1, 2015  stands as the final decision of the Commissioner for the claim for a period of disability[ and] disability insurance

---

by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

benefits." (Tr. 2; *see also id.* ("On December 30, 2014, the claimant filed an application for a period of disability, disability insurance benefits alleging that she became disabled on October 30, 2014. The claimant last met the requirements of insured status for a period of disability, disability benefits on June 30, 2006. Thus, the alleged onset date is after the claimant's date last insured. In view of the above, the claimant's request for hearing filed on June 4, 2015 for the claim for a period of disability, disability insurance benefits, should have been dismissed by the Administrative Law Judge as provided by 20 CFR 404.957.")). Thus, the hearing decision became the final decision of the Commissioner of Social Security on Plaintiff's claim for SSI benefits; however, the Order of the Appeals Counsel dated February 1, 2018, stands as the final decision on Plaintiff's claim for a period of disability and disability insurance benefits.

Plaintiff alleges disability due to morbid obesity with peripheral edema, hypothyroidism, hypertension, mitral valve prolapse with atypical chest pain and history of angina, occipital lymphadenopathy, sleep apnea, arthritis, bursitis, sacroiliac dysfunction with chronic low back pain, bilateral shoulder pain status-post two left shoulder surgeries, thyroid nodules, hyperglycemia with mildly elevated glucose, major depressive disorder, post-traumatic stress disorder, anxiety disorder, and diabetes mellitus. The Administrative Law Judge (ALJ) made the following relevant findings:

**1.     The claimant meets the insured status requirements of the Social Security Act through June 30, 2006.**

**2.     The claimant has not engaged in substantial gainful activity since October 30, 2014, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).**

**3.     The claimant has the following severe impairments: morbid obesity with peripheral edema, hypothyroidism, hypertension (HTN), mitral valve prolapse (MVP) with atypical chest pain [and] history of**

angina, occipital lymphadenopathy, sleep apnea, arthritis, bursitis, sacroiliac dysfunction with chronic low back pain (CLBP[)] and bilateral shoulder pain s/p two (2) left shoulder surgeries, thyroid nodule, hyperglycemia with mildly elevated glucose, major depressive disorder (MDD), post-traumatic stress disorder (PTSD), and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

.    .    .

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

.    .    .

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except no overhead reaching bilaterally; frequently reaching in all directions; and can understand, remember, and carry out short simple instructions not detailed or complex instructions; can attend to tasks or concentrate and persist at an appropriate pace for two-hour intervals at a time throughout the course of an 8-hour workday with customary work breaks; contact with co-workers and the general public should be infrequent or occasional; supervision should be provided in a supportive manner and changes in the work routine should be gradually introduced.

.    .    .

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

.    .    .

7.    The claimant was born on December 31, 1974, and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

**9.      Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).**

**10.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

.      .      .

**11.      The claimant has not been under a disability, as defined in the Social Security Act, from October 30, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 41, 42, 44, 54, 55 & 56 (emphasis in original)).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform h[is] past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[3] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:

---

[3]      "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

(1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to her past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform light work existing in significant numbers in the national economy, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*,

---

[4]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)).   And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'"  *Id.* (quoting *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Smith presents four claims on appeal: (1) the ALJ erred in misrepresenting the treatment records from Cahaba Mental Health Center and the findings of Dr. David Hodo, the psychiatric consultative examiner;[5] (2) the ALJ erred in relying on the opinion of a non-examining, reviewing DDS consultant; (3) the ALJ erred in failing to indicate the weight given to the opinion of consultative examiner, Dr. Alan Babb; and (4) the Appeals Council erred in failing to properly consider evidence submitted to it, ignoring the records from Doc in a Bus and failing to remand the case for proper consideration of additional medical records, including a hospitalization for Major Depressive Disorder.[6] Because the first three assignments of error relate to the weight accorded the opinion evidence in this case, the Court considers those issues together before turning to Plaintiff's fourth assignment of error.

A.    **Opinion Evidence**.   "Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the process for

---

[5]      Plaintiff contends that this misrepresentation led the ALJ to reject Hodo's opinion despite it being supported by four years of mental health treatment records, the observations of Dr. Babb, and his own findings. (Doc. 18, at 1-2.)

[6]      Because Plaintiff in no manner challenges the February 1, 2018 Order of the Appeals Council, which effectively dismissed her claim for a period of disability and disability insurance benefits (*see* Tr. 2-3), and the undersigned finds that decision unassailable, the claims raise by Smith on appeal have import only with respect to her application for SSI benefits.

determining disability." *Kahle v. Commissioner of Social Security,* 845 F.Supp.2d 1262, 1271 (M.D. Fla. 2012). In general, "the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Social Security Administration,* 164 Fed.Appx. 919, 923 (11th Cir. Jan. 31, 2006). In assessing the medical evidence, "[t]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor[,]" *Romeo v. Commissioner of Social Security,* 686 Fed.Appx. 731, 732 (11th Cir. Apr. 24, 2017) (citing *Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1179 (11th Cir. 2011)), and the ALJ's stated reasons must be legitimate and supported by the record, *see Tavarez v. Commissioner of Social Security,* 638 Fed.Appx. 841, 847 (11th Cir. Jan. 7, 2016) (finding that the "ALJ did not express a legitimate reason supported by the record for giving [the consulting physician's] assessment little weight."); *compare id. with Nyberg v. Commissioner of Social Security,* 179 Fed.Appx. 589, 590-591 (11th Cir. May 2, 2006) (unpublished) (recognizing that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'").

"When weighing each medical opinion,[7] the ALJ must consider whether the doctor has examined the claimant; the doctor's relationship with the claimant; the medical

---

[7]     "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1).

(Continued)

evidence supporting the doctor's opinion; how consistent the doctor's opinion is with the record as a whole; and the doctor's specialization." *Muniz v. Commissioner of Social Security,* 716 Fed.Appx. 917, 919 (11th Cir. Nov. 27, 2017), citing 20 C.F.R. § 416.927(c) (footnote added); *see also Jacks v. Commissioner, Social Security Administration,* 688 Fed.Appx. 814, 819 (11th Cir. May 23, 2017) ("The ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including whether the doctor has examined the claimant, the medical evidence and explanation supporting the doctor's opinion, and how consistent the doctor's 'opinion is with the record as a whole.'" (citations omitted)). "These factors apply to both examining and non-examining physicians." *Huntley v. Social Security Administration, Commissioner,* 683 Fed.Appx. 830, 832 (11th Cir. Mar. 29, 2017) (citations omitted).

> When considering an examining, non-treating medical opinion, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the administrative law judge] will give that opinion. The better an explanation a source provides for an opinion, the more weight [the administrative law judge] will give that opinion." Moreover, "because nonexamining sources have no examining or treating relationship with [the applicant], the weight [the administrative law judge] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." In addition, "the more consistent an opinion is with the record as a whole, the more weight [the administrative law judge] will give to that opinion."

*Id.* at 832-33 (internal citations omitted; footnote added). A panel of the Eleventh Circuit has determined that an "ALJ is not required to explicitly address each" of the factors set forth in § 416.927(c), *see Lawton v. Commissioner of Social Security,* 431 Fed.Appx. 830, 833 (11th Cir. June 22, 2011), and that the core inquiry is whether "good cause" exists for rejecting particular medical opinions, *see id.*

With these principles in mind, the undersigned considers whether the ALJ in this case improperly considered the opinion evidence in this case. As aforesaid, Plaintiff contends that the ALJ made the following errors with respect to the opinion evidence in this case: (1) he misrepresented the treatment records from Cahaba Mental Health Center and the findings of the consultative psychiatric examiner, Dr. Hodo, leading him to improperly reject Dr. Hodo's opinions/findings; (2) he erred in relying on the opinion of a reviewing, non-examining consultant; and (3) he erred in failing to indicate the weight afforded to the opinion of consultative examiner Dr. Babb. Before directly addressing Plaintiff's assignments of error, the undersigned sets forth the ALJ's analysis of the opinion evidence in this case.

> As for the opinion evidence, pursuant to SSR 96-6p, the undersigned has considered the opinions rendered by the State agency medical consultant who opined that the claimant can perform medium work. Although such assessment finds the claimant to be substantially *less impaired* than we now find, that assessment fully supports the ultimate decision reached. The residual functional capacity found in this decision is generally consistent with the most recent evaluation by the State agency medical consultant for the claimant's mental ability (exhibit C6A).
>
> The undersigned has given little weight to the mental functional assessments of Dr. Hodo (Exhibit C15F/4-6). His opinion is given no weight because the objective medical evidence, specifically her lengthy mental health treatment records, do not support it and it is inconsistent with the record as a whole. The undersigned finds that the medical evidence of record, specifically those of her treating doctors and therapists, who are in the best position to assess her functional limitations, superior to his opinion. Furthermore, if the claimant were so extremely impaired in all 10 categories evaluated, in everything, she would have long ago be[e]n confined to a psychiatric institution. Indeed how would persons who were so confined be evaluated? If they were extremely impaired in every category, they would still be no worse than this claimant according to this evaluation. But this claimant has not suffered a true nervous breakdown and moreover has not been voluntarily or involuntarily confined to an institution.

(Tr. 52-53; *see also id.* at Tr. 54 ("As for her mental impairments, her treatment notes indicate that her therapy and medications have been beneficial. Although some of her mental status exams have shown that she was making minimal progress, some have also shown that she has made progress. Her treating psychiatrist has continued with the same treatment plan, with little change in her medication. This tends to show that her condition has not worsened warranting a modification in treatment or medication. The evidence shows that many of her stressors were dealing with illnesses of her mother, father and sister. She has not had any psychiatric admissions. Her treating psychiatrist does not endorse an opinion of disability.")).

In arguing that the ALJ misrepresented the treatment records from Cahaba Mental Health Center, the Plaintiff appears to be taking direct aim at the quoted comments of the ALJ set forth on page 54 of the Transcript. (*See* Doc. 18, at 6-8). However, nothing about Plaintiff's arguments prove that the ALJ actively misrepresented the record in making those comments, as there is evidence in the record, for example, that does show that her therapy and medications were beneficial (*see, e.g.,* Tr. 1077, 1087 & 1090 (therapy notes indicating that Plaintiff openly shared and responded appropriately to prompts); 1200 (therapy notes reflect Plaintiff was feeling better by the end of the session); 1204 (Plaintiff reported being open to the idea of volunteering)), that her treating psychiatrist never endorsed an opinion that she was disabled because of her mental impairments (*compare, e.g.,* Tr. 924, 927, 929 & 931 *with* Tr. 1046 & 1055), and nothing in the evidence that was before the ALJ for review reflected that Plaintiff had experienced a psychiatric admission (*see* Tr. 49-52 (the ALJ's elucidation of the evidence of record before him regarding

Plaintiff's mental impairments)).[8] Thus, the Court does not perceive significant misrepresentation by ALJ of the treatment records from Cahaba Mental Health Center, as Plaintiff maintains, and certainly not enough evidence of misrepresentation/misconstruction of the evidence that would serve to undermine the ALJ's primary basis for rejecting Dr. Hodo's "extreme" mental RFC findings, namely, that "the objective medical evidence, specifically her lengthy mental health treatment records, do not support it[.]" (Tr. 53.) This is a sufficient enough reason, standing alone, for the ALJ to accord little weight to Dr. Hodo's findings, *see Tavarez, supra,* 638 Fed.Appx. at 847 (finding that the "ALJ did not express a legitimate reason supported by the record for giving [the consulting physician's] assessment little weight."). The treatment records from Cahaba Mental Health Center reflect that while Plaintiff certainly had some limitations cause by her mental impairments (*see, e.g.,* Tr. 934, 936, 1042-43, 1045, 1047-48, 1050-52, 1054, 1056, 1077, 1087, 1090 & 1094), those limitations never reached the "extreme" limitations noted by the one-time examiner, Dr. Hodo (*see* Tr. 1060-61);[9] indeed,

---

[8]    To be sure, the ALJ did not pen his decision until April 7, 2017 (*see* Tr. 56), approximately one month after Plaintiff was discharged on March 6, 2017 (after an 8-day stay) from Brookwood Medical Center for Major Depressive Disorder (*see* Tr. 83-108); however, Plaintiff has made no showing that this evidence was before the ALJ at the time he entered his decision. Therefore, no argument can be made that the ALJ misrepresented the record in this regard.

[9]    Having read Dr. Hodo's report and mental RFC assessment, there can be little question but that the "extreme" limitations found by Hodo are in no small measure related to Smith's report that she was raped by a friend's brother at age 11 and, as a result, was experiencing associated intrusive thoughts, flashbacks, and memories. (*See* Tr. 1058 & 1059 ("She says that when she was 11 years old, she was raped by a friend's brother. She never told anyone until she was an adult, and nothing was ever done about it, and the person was not arrested. She has no idea [what] happened to the friend or the brother. **She has recurrent intrusive thoughts about the assault**. As an adult, she has talked to her family, and they are aware of this, and they are supportive of her. . . . Her mood was of significant depression **with intrusive thoughts, flashbacks, and memories.**" (emphasis added)). The Court has emphasized this report to Dr. Hodo, and the impact of that report on the mental RFC findings (Continued)

12

Plaintiff's GAF scores consistently remained in the 51-60 range (*see* Tr. 934, 936, 1042-43, 1045, 1047-48, 1050-52, 1054, 1056, 1077, 1087, 1090 & 1094)*,* which is consistent with moderate symptoms and moderate difficulty in social and occupational functioning, *see* http://www.rattler-firebird.org/va/gafchart.php (last visited, January 30, 2019, at 10:41 a.m.). In addition, Plaintiff's treating psychiatrist, Dr. Patrice Donahue, never indicated that she believed that Smith's mental impairments (primarily, anxiety) caused the extreme limitations noted by Dr. Hodo. (Tr. 1046 & 1055; *see also* Tr. 924, 927 929 & 931.) The foregoing, therefore, provides sufficient evidentiary support for the ALJ's decision to accord little weight to Dr. Hodo's mental RFC opinions.

Turning to Plaintiff's argument that the ALJ erred in relying on the opinion of a reviewing, non-examining consultant (*see* Doc. 18, at 10-11), the undersigned notes that the ALJ concluded in his decision that "[t]he residual functional capacity found in this decision is generally consistent with the most recent evaluation by the State agency medical consultant for the claimant's mental ability (exhibit C6A)." (Tr. 52-53.) The record reflects that Dr. Linda Duke, a non-examining, reviewing psychologist completed a mental residual functional capacity assessment of plaintiff on March 27, 2015, and thereon indicated that, at best, Plaintiff is moderately limited when it comes to certain work-related tasks, like understanding, remembering, and carrying out detailed instructions,

---

(*compare id. with* Tr. 1060-61), because nowhere in the records from Cahaba Mental Health Center is there any suggestion that Smith reported that she had been raped by a friend's brother at age 11 (*see* Tr. 1053, 1073, 1081, 1086, & 1089-90 (reflecting reports by Smith to therapists at Cahaba Mental Health Center of flashbacks of finding a friend deceased in her home in 2011, but no reports of being raped at age 11)). Given Plaintiff's failure to report this significant event to her treating psychiatrist and the therapists at Cahaba Mental Health Center, and the undoubted influence that purported event (and intrusive thoughts regarding same) had on Hodo's RFC findings, the viability of Dr. Hodo's findings is further undermined.

maintaining attention and concentration for extended periods, interacting appropriately with the general public, getting along with coworkers, responding appropriately to criticism from supervisors, and responding appropriately to changes in the work setting. (Tr. 399-401.) These findings are certainly consistent with the ALJ's mental RFC assessment. (*Compare id. with* Tr. 44.) And while the Plaintiff is certainly correct that the opinion of a non-examining, reviewing physician is entitled to little weight and, standing alone, does not constitute substantial evidence to support an administrative decision (*see* Doc. 18, at 11 (citing cases)), Dr. Duke's opinion does not stand alone; rather, the Court finds that Dr. Duke's opinion is consistent with the evidence of record she had for her review, in particular the treatment records from Dr. Donahue and therapists at Cahaba Mental Health Center (*see, e.g.,* Tr. 934, 936, 1042-43 & 1054-56). And since Dr. Duke's opinions are consistent (not inconsistent) with the treatment records from Cahaba Mental Health Center and Plaintiff's treating psychiatrist, the ALJ did not err by relying on the opinions of the non-examiner relative to Plaintiff's mental RFC. *Compare, e.g., Milner v. Barnhart,* 275 Fed.Appx. 947, 948 (11th Cir. May 2, 2008) (recognizing that an ALJ may reply upon the opinions of non-examining sources where they do not conflict with those of examining sources) *with Crawford, supra,* 363 F.3d at 1158, 1160 (holding that the ALJ did not err in relying on consulting physician's opinion where it was consistent with medical evidence and findings of examining physician).

And, finally, the undersigned finds no merit to Plaintiff's argument that the ALJ erred in failing to indicate the weight given to the opinion of the consultative examiner, Dr. Alan Babb. (*See* Doc. 18, at 11-12.) In her brief, the Plaintiff sets forth some of Dr. Rabb's observations regarding Plaintiff, including that she presented with a very flat, robotic affect

(*see id.* at 11). Plaintiff also acknowledges that the ALJ reviewed Dr. Babb's April 13, 2015 report (*id.* at 12, citing Tr. 48[10]), but states that the ALJ failed to indicate what weight he gave to Dr. Babb's opinion (Doc. 18, at 12). Presumably, the opinion to which Plaintiff is referring is that of Plaintiff having a "flat, robotic affect," inasmuch as Dr. Babb, offered no opinion that Plaintiff was disabled or, otherwise, had any significant mental or physical limitations. (*See* Tr. 942-44.) However, any failure by the ALJ to state the weight he was affording Dr. Babb's "flat, robotic" affect observations amounts to mere harmless error particularly given Dr. Babb's concomitant observations that Plaintiff's effort and motivation were poor (*see* Tr. 944) and the consultative physician's recommendation, which was acted on, that Smith be evaluated by a mental health professional (*see id.* ("It may be very helpful to have her evaluated through mental health by the DDS as part of her overall assessment.")). More to the point, Dr. Babb's "flat, robotic affect" observations simply do not directly contradict the ALJ's mental RFC findings, and, therefore, any error in failing to explicitly state the weight afforded these observations is harmless. *See, e.g., Wright v. Barnhart,* 153 Fed.Appx. 678, 684 (11th Cir. Nov. 3, 2005) (finding that although the ALJ failed to explicitly state what weight he afforded the opinions of four doctors, any error regarding their opinions was harmless since none of their opinions directly contradicted the ALJ's findings).

**B.** **New Evidence Submitted to the Appeals Council.** Smith's final assignment of error is that the Appeals Council erred in failing to consider evidence submitted to it, specifically ignoring the records from Doc in a Bus and failing to remand

---

[10] In the ALJ's review of Dr. Rabb's opinion, he notes Dr. Babb's three separate observations regarding Plaintiff's flat (robotic, retarded) affect. (Tr. 48).

the case for proper consideration of additional mental health records, including a hospitalization for Major Depressive Disorder. (Doc. 18, at 12-14.) In its review decision relative to Smith's claim for supplemental security income (SSI) benefits, the Appeals Council commented on the additional evidence submitted to it, as follows: "You submitted medical records from Cahaba Mental Health Center, dated December 22, 2016 to April 11, 2017 (63 pages); medical records from Vaughn Regional Medical Center, dated September 22, 2016 to March 17, 2017 (34 pages) and dated March 31, 2017 to August 14, 2017 (22 pages); and medical records from Brookwood Medical Center, dated February 28, 2017 to March 6, 2017 (26 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence. You submitted medical records from Cahaba Mental Health Center, dated May 18, 2017 to August 17, 2017 (21 pages). The Administrative Law Judge decided your case through April 7, 2017. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before April 7, 2017." (Tr. 5.)

The Eleventh Circuit has made clear that "[w]ith few exceptions, the claimant is allowed to present new evidence at each stage of th[e] administrative [review] process[,]" including before the Appeals Council. *Ingram v. Commissioner of Social Security Admin., 496 F.3d 1253, 1261 (11th Cir. 2007).* And while the Appeals Council has the discretion not to review the ALJ's denial of benefits, *Flowers v. Commissioner of Social Sec., 441 Fed.Appx. 735, 745 (11th Cir. Sept. 30, 2011),* it "must consider new, material, and chronologically relevant evidence" submitted by the claimant. *Ingram, supra,* 496 F.3d at 1261*; see also* 20 C.F.R. § 404.970(b) ("If new and material evidence is submitted, the

Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.").

> The new evidence is material if it is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Hyde v. Bowen,* 823 F.2d 456, 459 (11th Cir. 1987) (citations omitted). It is chronologically relevant if "it relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b). If these conditions are satisfied, the Appeals Council [] must then review the case to see whether the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Id.*

*Ring v. Berryhill,* 2017 WL 992174, *4 (N.D. Ala. Mar. 15, 2017), *aff'd,* 728 Fed.Appx. 966 (11th Cir. Mar. 23, 2018).

In *Flowers, supra,* the Eleventh Circuit made clear that "[w]hen a claimant properly presents new evidence, and the Appeals Council denies review, the Appeals Council must show in its written denial that it has adequately evaluated the new evidence." 441 Fed.Appx. at 745 (citation omitted). Indeed, "[i]f the Appeals Council merely 'perfunctorily adhere[s]' to the ALJ's decision, the Commissioner's findings are not supported by substantial evidence and we must remand 'for a determination of [the claimant's] disability eligibility reached on the total record.'" *Id.,* quoting *Epps v. Harris,* 624 F.2d 1267, 1273 (5th Cir. 1980). The panel in *Flowers* ultimately concluded that the Appeals Council did not adequately consider the new evidence submitted by the claimant because "apart from acknowledging that Flowers had submitted new evidence, the Appeals Council made no further mention of it or attempt to evaluate it." *Id.*

However, since the decision in *Flowers*, subsequent panels of the Eleventh Circuit have indicated that where the Appeals Council accepts a claimant's new evidence but denies "review because the additional evidence fail[s] to establish error in the ALJ's decision[,]" that administrative body adequately evaluates the new evidence. *Mitchell v.*

*Commissioner, Social Sec. Admin.,* 771 F.3d 780, 784 (11th Cir. 2014); *see also Beavers v. Social Sec. Admin., Commissioner,* 601 Fed.Appx. 818, 822 (11th Cir. Feb. 9, 2015) ("Here, the Appeals Council denied Worthy's petition for review, stating, as it did in *Mitchell*, that it had considered Worthy's reasons for disagreeing with the ALJ's decision and her new evidence, but found that the new evidence did not provide a basis for changing the ALJ's decision. Under *Mitchell*, no further explanation was required of the Appeals Council."). Indeed, the *Mitchell* panel noted that the Appeals Council "was not required to provide a detailed rationale for denying review." 771 F.3d at 784; *see also id.* at 784-85 ("We note that our conclusion that the Appeals Council is not required to explain its rationale for denying a request for review is consistent with the holdings of other circuits that have considered this issue.").

These subsequent panel cases leave the viability of *Flowers* questionable given that, as noted by the court in *Flowers*, the Appeals Council "stated that it had considered Flowers's reasons for her disagreement with the ALJ's decision and her additional evidence[]" but "concluded 'that this information does not provide a basis for changing the Administrative Law Judge's decision.'" 441 Fed.Appx. at 740. This, of course, is the exact Appeals Council rationale upheld by later Eleventh Circuit panels in *Mitchell* and *Beavers* without need for further explanation/evaluation. *Compare id. with Mitchell supra,* 771 F.3d at 784-85 and *Beavers, supra,* 601 Fed.Appx. at 822.

With these principles in mind, the Court turns to Plaintiff's arguments relative to the Appeals Council's treatment of the medical records submitted to it, Plaintiff again arguing that the Appeals Council ignored the records from Doc in a Bus and failed to remand the case for proper consideration of additional mental health records, including a

hospitalization for Major Depressive Disorder (Doc. 18, at 12-14). Initially, the undersigned cannot agree with Plaintiff that the Appeals Council ignored the records from Doc in a Bus dated January 27, 2017 through August 11, 2017 (*see id.* at 12), inasmuch as a review of the exhibits submitted to the Appeals Council unequivocally establishes that the Doc in a Bus records were interspersed with records from Vaughn Regional Medical Center and indexed as coming from Vaughn Regional Medical Center (*compare* Tr. 61-82 *with C*ourt Transcript Index), records which the Appeals Council definitely reviewed prior to rendering its decision (*compare* Tr. 5 ("You submitted medical records from . . . Vaughn Regional Medical Center . . . dated March 31, 2017 to August 14, 2017 (22 pages)[.]") *with* Tr. 61-82 (22 pages)).

As for the argument that the Appeals Council erred in failing to remand the case to the ALJ for proper consideration of the additional mental health records, including a hospitalization for Major Depressive Disorder (Doc. 18, at 12-13), Plaintiff seems to be suggesting that since one of the reasons the ALJ rejected Dr. Hodo's opinions regarding "extreme" mental RFC limitations was because Plaintiff had no psychiatric hospitalizations and the evidence submitted to the Appeals Council shows a psychiatric admission for Major Depressive Disorder in February 2017, two months before the ALJ issued his decision, remand is necessary for the ALJ's proper consideration of these hospitalization records (*see id.* at 13). Plaintiff then cites to a number of cases, primarily decided in the wake of *Flowers, supra,* but no cases after the panel decisions in *Mitchell* and *Beavers*, *supra*, for the very general proposition that remand in this case is appropriate because "[t]he Appeals Council did not demonstrate that it adequately evaluated the new evidence, as required." (*Id.*) Initially, this Court cannot agree with

Plaintiff's very general argument, as just articulated, because, as alluded to earlier, Eleventh Circuit panel opinions subsequent to *Flowers* have called into question any remaining viability of *Flowers*, *compare Mitchell, supra,* 771 F.3d at 784-85 *with Beavers,* 601 Fed.Appx. at 822; therefore, this Court cannot agree with any suggestion by Smith that the language utilized by the Appeals Council (*see* Tr. 5 ("We find this evidence does not show a reasonable probability that it would change the outcome of the decision.")) was inappropriate and does not demonstrate that it adequately evaluated the new evidence, *see, e.g., Mitchell, supra,* 771 F.3d at 782 & 785 (upholding Appeals Council's statement that the additional information "did not provide a basis for changing the ALJ's decision[]" and further explaining that "the Appeals Council is not required to explain its rationale when denying a request for review."). In addition, the Court cannot agree with Plaintiff's suggestion that had the ALJ had before him the Brookwood hospitalization records that he necessarily would have not rejected Dr. Hodo's "extreme" limitations (*see* Doc. 18, at 12-13), inasmuch, as aforesaid, the primary basis for the ALJ's rejection of Dr. Hodo's mental RFC limitations was not the lack of a psychiatric hospital admission but, instead, was because the limitations found by the one-time consulting physician were inconsistent with the treatment records from Plaintiff's treating psychiatrist (Dr. Donahue) and therapists at Cahaba Mental Health Center (Tr. 52). Accordingly, the Court cannot find that the Appeals Council erred in determining that the new evidence did not establish "a reasonable probability that it would change the outcome of the decision." (Tr. 5.) In other words, this evidence does not create a reasonable probability that the ALJ would have wholly accepted the "extreme" limitations found by one-time examiner, Dr. Hodo,

given that substantial evidence, namely, the medical records from Cahaba Medical Center, support the ALJ's rejection of those limitations.

There being no other claims of error asserted, the Court finds that the Commissioner's final decision denying Smith benefits is due to be affirmed.

## <u>CONCLUSION</u>

In light of the foregoing analysis, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 5th day of February, 2019.

s/P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**